In the Matter of the General Assignment for the Benefit of Creditors of INTERNATIONAL RIBBON MILLS, LTD., Assignor, to MAXWELL STURTZ, Appellant. ARJAN RIBBONS, INC., Respondent.

First Department, October 18, 1973.

*Joseph A. Barbosa* of counsel (*Robert P. Herzog*, attorney), for appellant.

*L. Michael Rudolph* of counsel (*Schonbrun & Rudolph*, attorneys), for respondent.

STEVENS, P. J. This is an action to compel an assignee for the benefit of creditors to turn over moneys to petitioner, a judgment creditor of International Ribbon Mills, Ltd. (International) the judgment debtor. The petition was granted and an order (judgment) entered February 28, 1973. This appeal resulted.

On April 21, 1972, a judgment was entered in the Civil Court of the City of New York, New York County, in favor of Arjan Ribbons, Inc. (Arjan), in the sum of $4,412.47. On April 24, 1972, pursuant to CPLR 5222 (subd. [b]), Arjan mailed a restraining notice to International, 18 days before International executed a general assignment to Maxwell Sturtz for the benefit of creditors on May 13, 1972. The assets consisted of accounts receivable, or the proceeds thereof.

On April 27, 1972 Arjan delivered a property execution to the Sheriff of the City of New York, and on August 3, 1972, a like

execution was delivered to the Sheriff of the County of Nassau with notice to garnishee upon Sturtz, the assignee. A further and like execution was delivered on August 18, 1972 to the Sheriff of the City of New York, with notice to garnishee upon one Robert Herzog, attorney for the assignee. All of the executions remained unsatisfied.

Arjan urges that by virtue of its superior lien, it is entitled to a turnover of a sum sufficient to satisfy its judgment. The question then is whether the lien of Arjan, a judgment creditor, is superior to that of the lien of Sturtz, as assignee for the benefit of creditors.

Section 9–310 of the Uniform Commercial Code, dealing with "priorty of certain liens arising by operation of law," provides "When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise." Priority, then, depends upon a determination of whether Sturtz is a lien creditor from the time of the assignment, the effect of the restraining notices, and the effect of the delivery of the executions.

CPLR 5202 states, in part " (a) * * * Where a judgment creditor has delivered an execution to a sheriff, the judgment creditor's rights in a debt owed to the judgment debtor or in an interest of the judgment debtor in personal property, against which debt or property the judgment may be enforced, are superior to the extent of the amount of the execution to the rights of any transferee of the debt or property, except: " 1. a transferee who acquired the debt or property for fair consideration before it was levied upon; or " " (b) * * * Where a judgment creditor has secured an order for delivery of, payment of * * * a debt owed to the judgment debtor or an interest of the judgment debtor in personal property, the judgment creditor's rights in the debt or property are superior to the rights of any transferee of the debt or property, except a transferee who acquired the debt or property for fair consideration and without notice of such order."

Fair consideration is given when in good faith, in exchange for the property or obligation, property is received by the judgment debtor or an antecedent debt is satisfied. The antecedent debt which is satisfied upon receipt of the property or obligation, represents a fair equivalent of what is conveyed. (Debtor

and Creditor Law, § 272.) If the transfer of the assets, i.e., accounts receivable, was an exercise by International of its power of honest disposal, payment of the antecedent debts thereby was fair consideration for the transfer. It would seem that the burden is upon Arjan to show that the transfer was not made in satisfaction of a debt or was made with intent to defraud.

There does not seem to have been a levy here, i.e., a seizure of all the rights of the judgment debtor, and there is a question whether there was a perfected lien by Arjan. (Cf. *City of New York* v. *Panzirer*, 23 A D 2d 158.)

Section 9–301 of the Uniform Commercial Code states that an unperfected security interest is subordinate to the rights of a lien creditor without knowledge of the security interest and before it is perfected. A lien creditor is defined, in part, as one '' who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment * * * Unless *all the creditors represented had knowledge of the security interest* such a representative of creditors is a lien creditor without knowledge even though he personally has knowledge of the security interest ''. (Uniform Commercial Code, § 9–301, subd. [3]; emphasis supplied.) There is no indication in the record that all creditors involved were aware of the interest of Arjan. Nor is it evident that Sturtz had had such knowledge.

Despite the foregoing, *delivery* of an execution to a sheriff creates an interest superior to that of any transferee who thereafter acquires his interest except that enumerated in CPLR 5202 (subd. [a]). The first execution to the Sheriff of New York County was returned unsatisfied apparently before the assignment. There was no written extension of the execution. The second execution issued was on August 18, 1972, subsequent to the assignment. Where a return of an execution under CPLR 5230 has been made prior to the expiration of 60 days on property capable of delivery, the Sheriff could not thereafter levy under that execution. (See CPLR 5230, subd. [b]; Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5202.12.)

If the assets in this case be considered not capable of delivery since they were accounts receivable, service of a copy of the execution on the proper garnishee would suffice (CPLR 5232, subd. [a]). Here Sturtz received the property by assignment on May 18, 1972, prior to the August 3, 1972 execution and notice to garnishee, Sturtz. But if the property be considered capable of delivery, CPLR 5232 (subd. [b]) requires the Sheriff to levy by taking the property into his custody.

Yet to be resolved is the effect of the restraining notice mailed by Arjan to International on April 24, 1972. This notice was given pursuant to CPLR 5222 (subd. [b]).

"A judgment debtor served with a restraining notice is for-bidden to make or suffer any sale, assignment, transfer or interference with any property in which he has an interest, except upon direction of the sheriff or pursuant to an order of the court, until the judgment is satisfied or vacated." (CPLR 5222, subd. [b].) It has been held that there is a violation of a restraining order when a judgment debtor voluntarily makes an assignment of assets for the benefit of creditors (*Rossman Corp.* v. *Polizzi*, 231 App. Div. 872). So there is no doubt that International violated the restraint, and is therefore subject to contempt proceedings (CPLR 5251). Weinstein-Korn-Miller (N. Y. Civ. Prac., vol. 6) notes the omission from CPLR 5222 (subd. [b]) of a sentence proposed by the Advisory Committee, which, by its language, would have provided that a transfer by a judgment debtor while a restraining order is in effect, would have been ineffective against a judgment creditor (6 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5222.20). After an extended discussion of the subject it is stated "it seems clear that the service of a restraining notice no longer creates a lien" (6 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5222.21; cf. *Rinzler* v. *New York City Tr. Auth.*, 37 Misc 2d 77). Even the case upon which the court below relied recognizes that "the service of the restraining notice did not create a lien" (*Matter of City of New York* [*Nassau Expressway*], 56 Misc 2d 602, 605), but nevertheless adjudicated the claims of petitioner therein to be superior to that of the assignee.

The general assignment to Sturtz was designed to afford equal treatment to all creditors and cannot be characterized as fraudulent under the Debtor and Creditor Law.

It is concluded that the rights of the assignee under the assignment are superior to those of petitioner.

Order-judgment entered February 28, 1973, in New York County (SAYPOL, J.) reversed on the law and the petition is dismissed without costs to either party.

KUPFERMAN, J. (dissenting). The majority opinion well analyzes the situation and delineates the problem. However, I cannot agree that a restraining notice pursuant to CPLR 5222 (subd. [b]) has no priority consequences in this situation, even though there may be some difference as to what those consequences should be. (See Enforcement Priorities and Liens: The

New York Judgment Creditor's Rights in Personal Property, by Distler and Schubin, 60 Col. L. Rev. 458, 484.)

To ignore the restraining notice, as CONROY, J. stated in *Matter of City of New York (Nassau Expressway)* (56 Misc 2d 602, 605 [Spec. Term, Queens County, 1968]), '' is to make a mockery of the provisions of CPLR 5222.''

In analyzing the *Nassau Expressway* case, the excellent Supplementary Practice Commentary (1968) by Professor David D. Siegel has the following:

'' The result is a fair one, but must be approached cautiously because of its obvious inconsistency with the legislative history of CPLR 5222. The court was fully aware of this, but felt that to do otherwise would, leaving the judgment creditor to proceed only against the debtor, afford the former ' a near impotent remedy '. The contested assignment itself was the vehicle divesting the judgment debtor of the assets P sought.

'' The court's action can be justified, not as a battle between lienors, because neither P nor the assignees were formally that, but on the ground that CPLR 5234, since neither an execution nor order was involved, was inapplicable and irrelevant, leaving only the equities between P and the assignees to govern disputed rights between them. The equities were unquestionably with P, whose status as a judgment creditor was higher than that of the general creditors. The diligence of a creditor who reduces his debt to judgment deserves reward whenever a competing creditor with a CPLR 5234 lien is not in the picture. No such lienor being in the picture, the Nassau case need not be looked at as a ' lien ' problem.'' (1972–73 Pocket Part to CPLR 5222, p. 93.)

On balance, the decision at Special Term was correct and should be affirmed.

MARKEWICH, NUNEZ and MURPHY, JJ., concur with STEVENS, P. J.; KUPFERMAN, J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on February 28, 1973, reversed, on the law, and vacated, without costs and without disbursements, and the petition dismissed.